A. K. GIESE, Appellant, v. C. E. KIMBALL, Appellee.

HIGHWAYS: Burden of Proof. One who is on the wrong side of
1   the highway at the time he suffers a collision with another, has
    the burden to show that his presence on such side was consist-
    ent with ordinary care.

EVIDENCE: Physical Impossibility. The physical impossibility of
2   a transaction is sufficient reason for wholly rejecting it.

*Appeal from Pottawattamie District Court.—O. D.*
WHEELER, Judge.

DECEMBER 14, 1918.

ACTION for damages resulting from an automobile collision on the streets. At the close of the evidence, there was a directed verdict for the defendant, and the plaintiff appeals.—*Affirmed.*

*H. L. Robertson,* and *Killpack & Northrop,* for appellant.

*Kimball & Peterson,* for appellee.

EVANS, J.—The accident in question occurred at an intersection of streets. According to plaintiff's evidence, the defendant was driving south at 20 or 25 miles an hour, along the west side of Glen Avenue, while the plaintiff was driving west, at 10 or 12 miles an hour, along the center line of Pierce Street. The point of collision was

at the southeast corner of the intersection of these two streets. At the time of the collision, defendant's car was pointed slightly southeasterly while that of the plaintiff was pointed southwesterly. The right front spring of the defendant struck the right front wheel of the plaintiff. The accident having occurred at a point where the plaintiff was on the wrong side of the road, the first presumption of fault rested upon the plaintiff, and the burden was upon him to overcome it, and to show that his presence there, under the circumstances, was consistent with ordinary care. The circumstances relied on by the plaintiff to that end, and to the end also of showing the negligence of the defendant, are, in brief, that the defendant was turning eastwardly from Glen Avenue into Pierce Street, and that, instead of going around the center of the intersection to the south side of Pierce Street for that purpose, he "cut across" the northeast corner of the intersection, within one foot of the curb; and that, by reason of such position taken by the defendant, and the direction in which and speed at which he was going, a collision was rendered so imminent that the plaintiff drew his car to the left, in an attempt to avoid such collision. Each of these streets was 30 feet wide between the curb. Each of the cars was about 15 feet in length and 5 or 6 feet in width. The plaintiff himself testified, as a witness, as follows:

"I was coming west about the center of the street,—was driving about 10 or 12 miles an hour,—when I first saw the defendant, and was then about 20 or 25 feet from the intersection of Pierce Street and Glen Avenue. I first saw defendant on Glen Avenue, coming south toward the intersection. He was on the west side of Glen Avenue, coming up toward the south. He was about 20 or 25 feet from the intersection, and was going about 20 or 25 miles an hour. He was then about 8 feet distant from the west curb of Glen Avenue. When I first saw him, he came right towards

me; so I whipped over to the left, and gave him that corner of the street. He came within about a foot of the curb at that corner. I was coming up to Glen Avenue, and he came toward me with his car. I then whipped over to the left-hand side of the street, to give him room to get by. I went clear over against the curb on the other side. I saw he was going to run into me, and I whipped over, and he came right for me with his car. * * * Defendant ran right into me; the right side of the frame of his machine hit my machine square on the hub. My car was right up against the curbing, and could not go any farther; when his car hit my car, mine was right up against the curbing. * * * I was about 25 feet from the curb on Glen Avenue when I first saw defendant coming, and was right in the middle of the street. He was over on the west side of Glen Avenue. He came right toward me; I was in the center; he cut the corner, coming toward me; I was in the middle of the street; I didn't turn to the right, because I would have had a head-on collision; he was cutting the corner on me, and I was 25 feet from the intersection, in the middle of the street, and he was coming right toward me; he wasn't in the middle; I was in the middle; he was coming off the west side of Glen Avenue, and right toward me. * * * He turned toward the east; he cut the corner; I was over on the curb on the south side of the street, and farther east than the point from which he came. He turned his car on the west side of Glen Avenue. It was almost straight across Pierce Street when he hit; his hind wheel was about a foot from the northeast corner, over by the Woodward Factory; his front wheel must have been 10 feet from that point when he stopped, after the collision. After he stopped after the collision, he backed up a little bit; the hind wheel was within a foot of the curb. When the automobiles came together, the hind wheel of Mr. Kimball's machine was about a foot from the corner of the curb on the northeast

corner, and the front wheel was about 11 feet from that, after he stopped and backed up a little. Yes, sir. I say he missed the corner about a foot; I mean he was a foot out from the corner when he made the turn—not when he struck the machine. When he struck, there would be a distance of something like 20 feet from the rear of his machine to the south curb of Pierce Street; that would leave a distance of some 10 feet from the rear of his car over to the curb."

Nelson, a witness for the plaintiff, testified as follows:

"When Kimball was coming across the corner, Giese turned his machine to the left, and went clear over to the corner on the left-hand side. Mr. Kimball then, instead of turning to the left, turned his machine to the right. Kimball was driving it himself; after he had turned it to the right, it was facing south; it was on Glen Avenue, about the middle of the street, about half way across Pierce Street. I think he had got across the line, a little east of the east line of Glen Avenue. Mr. Giese had turned his car as far to the east as he could, over next to the curb. Then Kimball hit him; Kimball's machine hit Giese's machine on the right front spring; hit Giese's machine on the right front spring,—the spindle of the front wheel. * * * At the time Kimball's machine got to the middle of the street, headed southeast, Giese turned to the left, as far as he could go to the curb. There was all kinds of room for Kimball to pass on the left of Giese, but no room on the right. At the time Giese started to turn to the left, Kimball's machine was not in the middle of Pierce Street; it was going to the southeast, and a little to the left. Kimball was about the middle of Pierce Street, going southeast, when Giese commenced to turn. There was plenty of room on the left-hand side to pass. The machines met at the corner of the curb at Glen and Pierce."

Manifestly, the plaintiff's explanation of his position

at the time of the collision and the reason therefor are involved in great confusion. This doubtless results from the fact that the accident itself was calculated to confuse his memory as to the details of the events. In ruling upon the motion to direct a verdict, the trial court expressed the opinion that the explanation made was, in material respects, physically impossible. It appears from the plaintiff's evidence that he was driving on a level surface, whereas Kimball was driving up hill on Glen Avenue. When plaintiff first saw the defendant, the latter was driving close to the west side of Glen Avenue, and was 25 feet distant from the intersection. The plaintiff himself was 25 feet distant from the intersection. If the defendant cut the northeast corner, within a foot of the northeast curb, at 20 or 25 miles an hour, how could he have struck the plaintiff with the right side of his car at the southeast corner of the intersection 30 feet away? Nelson's testimony describes the defendant as being near the middle of the intersection, headed southeast. This would indicate an effort by the defendant to enter Pierce Street on its south side, which was his proper course. If the defendant passed from the west side of Glen Avenue to the northeast corner of the intersection within a foot of the curb, there was no occasion or emergency which required the plaintiff to turn to his left. All the evidence in his behalf shows that there was abundant room to pass along his north side.

We are constrained, therefore, to agree with the trial court, that the situation presented by the testimony on behalf of the plaintiff was physically impossible in material respects, and that it would not justify a verdict thereon in his behalf. It is certain, from his evidence, that the accident would not have happened, if he had not turned to the south side of the street. He could, doubtless, excuse his mistake by showing an emergency; but the only emergency

2. EVIDENCE: physical impossibility.

which fairly appears from his evidence is that which oc-
curred at the south side of the street, and which resulted in
the collision. As already indicated, in view of the place of
the accident, the burden was upon him to show that it was
not caused by his negligence. The order of the trial court
directing the verdict must, therefore, be sustained.—*Af-
firmed*.

PRESTON, C. J., WEAVER, GAYNOR, and SALINGER, JJ.,
concur.

STEVENS, J., takes no part.

LADD, J., dissents.